IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES HAROLD KINGS and<br>LESLIE JEANETTE KINGS | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:10-CV-2114-K-BK |
| STATE OF TEXAS and DALLAS<br>INDEPENDENT SCHOOL DISTRICT | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSION, AND RECOMMENDATION**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. The cause is now before the Court on Defendant State of Texas's ("The State") *First Amended Motion to Dismiss* (Doc. 43), filed December 1, 2010, and Defendant Dallas Independent School District's ("DISD") *Motion to Dismiss* (Doc. 44), filed December 3, 2010. After reviewing the relevant pleadings and applicable law, the Court finds Defendants' motions to be well taken and recommends that both motions be GRANTED. Furthermore, based on the filing of Plaintiffs' *Amended Complaint* and DISD's *Motion to Dismiss*, the Court recommends DISD's *Motion for Judgment on the Pleadings* (Doc. 29) be DENIED as moot.

**1. Relevant Facts**

The facts of the case are straight forward and not in dispute for purposes of the pending motions to dismiss. On March 28, 2008, while on a school field trip in Austin, Plaintiffs' son died after running into the street and being hit by a car. (Doc 42. at 13-14). Two teachers

1

supervising the students had changed certain activities in the itinerary without the knowledge or approval of the students' parents. (Doc 42. at 9). Plaintiffs contend that the two teachers did not enforce the 11:00 pm curfew and did not perform a physical room check to account for the presence of each of the students at the time of curfew. (Doc 42. at 10, 12-13). Plaintiffs further allege the teachers and chaperones were aware of the presence of an adult couple visiting the students who did not "belong to the entourage from the high school." (Doc. 42. at 10). The couple sold some of the students an illegal substance while visiting them in their hotel room. (Doc. at 10).

The teachers retired for the night and left watch to two adult chaperones who concluded their watch at approximately 1:30 am on March 28, 2008. (Doc. 42 at 10, 13). Subsequently, the students began to roam freely from room to room. (Doc. 42 at 13). The illegal substance was introduced to Plaintiffs' son in a bong, "under the guise of being 'just spiked tobacco.'" (Doc. at 13). Plaintiffs' son began to claim he could see strange images before "erupting into screams and panic." (Doc. 42 at 13). Plaintiffs' son then fought his way out of the motel room and ran into a nearby freeway where he was found after being struck by a "hit and run" driver. (Doc. 42 at 13-14). The final medical examiner's report confirmed a residual presence of *cannabis sativa* in his body. (Doc. 42 at 14).

Plaintiffs opine that the fate of their son was "highly preventable" and was caused by DISD's gross negligence. (Doc. 42 at 14). Specifically, Plaintiffs aver that DISD employees, Kent Ellingson and David Large, failed to provide a reasonable standard of supervision to the students on the field trip which created the unsafe environment that claimed the life of their son. (Doc. 42 at 3). Plaintiffs also aver that DISD superintendent, Michael Hinojosa, "failed to

discharge his duties to construct policies and guidelines by which safety, security, and supervision was to be provided to students during field trips." (Doc. 42 at 8).

On March 2, 2010, Plaintiffs filed suit in the Eastern District of Texas against Defendants for damages stemming from the death of their son. (Doc 1). On September 28, 2010, the case was transferred to the Northern District of Texas. On November 12, 2010, Plaintiffs filed an *Amended Complaint,* with the Court's permission, seeking damages from DISD and injunctive and declaratory relief from the State of Texas. (Doc. 41, 42). Defendants' pending motions to dismiss followed.

## 2. Legal Standard

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief may be granted. When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Dismissal is required when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975. Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. *Iqbal*, 129 S.Ct. at 1950.

When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S.Ct. at 1950. The Court finds that Plaintiffs have presented well-plead factual allegations. Therefore, taking all of Plaintiffs' well-plead factual allegations as true, the Court must next determine if the factual allegations in Plaintiff's *Amended Complaint* plausibly suggest an entitlement to relief.

### III. Analysis

#### A. Plaintiffs' section 1983 claim against The State

In their *Amended Complaint*, Plaintiffs allege that The State violated their right to due process "through its creation and enactment of the Texas Tort Claims Act" which acts as a bar to lawsuits against a school district for all torts involving the death or injury of a student in every instance except motor-vehicle accidents. (Doc. 42 at 5-6). Plaintiffs contend that this bar further violates their due process rights by preventing them from finding qualified counsel to prosecute their claims "due to intimidation from the immunity statutes and what is perceived by [potential counsel] to be an inexhaustible legal defense budget for the state." (Doc. 42 at 7). Plaintiffs seek injunctive and declaratory relief to declare the Texas Tort Claims Act (TTCA) unconstitutional and void. (Doc. 42 at 15)

In its *First Amended Motion to Dismiss*, The State asserts that it "has 11th Amendment immunity from claims under § 1983," and that it is "not a 'person' in the § 1983 context," and, therefore, Plaintiffs' claims against it should be dismissed. (Doc. 43 at 1). Based on clearly established law and for the reasons set forth herein, the Court recommends the State of Texas's *Amended Motion to Dismiss* be granted.

As correctly asserted by the State of Texas, the Eleventh Amendment bars claims against a state brought under 42 U.S.C. § 1983, regardless of whether the plaintiff seeks damages or injunctive relief. *Aguilar v. Texas Dept. Of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Therefore, this Court lacks jurisdiction over Plaintiffs's section 1983 claims and must dismiss these claims pursuant to FED. R. CIV. P 12(b)(1).

Notwithstanding this Court's lack of jurisdiction over Plaintiffs' section 1983 claims, Plaintiffs have not stated a claim to relief that is plausible on its face. First, contrary to Plaintiffs' argument that "the Fourteenth Amendment does not require a state to be a "person" in order to apply in the context of this suit" (Doc. 42 at 6), section 1983 does, in fact, impose such a requirement. The State of Texas is <u>not</u> a "person" within the context of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Second, although Plaintiffs contend that The State's enactment of the TTCA violates their right to "equal protection under the law," they have failed to allege any element of an equal protection claim.[1] Third, it is well established that the TTCA, which grants immunity to school districts, as well as similar statutes that grant governmental immunity, do not violate the due process or equal protection clauses of the Fourteenth Amendment. *Dunson v. Midland County Indep. Sch. Dist.*, 627 S.W2d 428, 429 (Tex. App.– El Paso, 1981) (stating the school district exception does have a rational and reasonable basis . . . . Since the public school system benefits the entire state and payments of private claims would divert money from schools and would thereby impair the quality and availability of public

---

[1] To state an equal protection violation based on a suspect class, a plaintiff must allege in its complaint (1) that it is a member of a protected class; (2) that a group similarly situated to the plaintiff: (a) exists, (b) falls outside of plaintiff s protected class, (c) received different treatment; and (3) the different treatment was motivated by purposeful discrimination. *Samaad v. City of Dallas*, 940 F.2d 925, 940-42 (5th Cir.1991).

education); *see also Grimes v. Pear River Valley Water Supply Dist.*, 930 F.2d 441, 444-45 (5th Cir. 1991); *Stout v. Grand Prairie Indep. Sch. Dist.*, 733 S.W.2d 290, 296-98 (Tex. App. – Dallas, 1987).

Under Texas law, any waiver of governmental immunity "is a matter to be addressed by the Legislature." *City of Galveston v. State*, 217 S.W.3d 466, 476 FN. 7 (Tex. 2007). Further, plaintiffs are not deprived their due process rights when a claim is barred by sovereign immunity because plaintiffs have "plenty of opportunity to contest the sovereign immunity scheme during the legislative process." *Grimes*, 930 F.2d at 444; *Stout*, 733 S.W.2d at 296-98.

### B. Plaintiffs' Wrongful Death Action Against DISD

Plaintiffs allege that a state-created danger was produced by DISD, "which brought about the death of [their] son, James Dante Kings, while he was in the charge of two school teachers of DISD." (Doc. 42 at 8). Specifically, Plaintiffs contend that DISD failed to provide adequate supervision to their son and failed to create policies to ensure the safety of students on school-sponsored field trips. (Doc. at 7-11). Plaintiffs are bringing this related state claim of gross negligence against DISD seeking monetary damages. (Doc. 42 at 16).

In its *Motion to Dismiss*, DISD argues that "any claim sounding in tort is barred by DISD's immunity as a matter of law," and that even if the "'state-created danger' theory of recovery" was cognizable here, Plaintiffs have failed to state such a claim. (Doc. 44 at 7-8). Based on clearly established law and for the reasons that follow, the Court recommends DISD's *Motion to Dismiss* be granted.

Under Texas law, a governmental unit "is immune from tort liability unless the Legislature has waived immunity." *Dallas Co. Mental Health & Mental Retardation v. Bossley*,

968 S.W.2d 339, 341 (Tex. 1998). Independent school districts are considered state governmental units under the TTCA, and the only circumstance for which the Texas Legislature has waived immunity for a school district facing state law tort claims involves injuries arising from the operation or use of a motor vehicle by the school district. TEX. CIV. PRAC. & REM. CODE §§ 101.001, 101.051.

Here, Plaintiffs do not contend their son's death resulted from the DISD's operation or use of a motor vehicle. Indeed, Plaintiffs admit their claim is barred by the TTCA, which is the predication for their claim against the State of Texas. (Doc. 42 at 16; Doc. 46 at 5-7). However, Plaintiffs invite the Court to disregard the TTCA and allow their claim against DISD to proceed because of the "potential abuse and irresponsibility the unconditional immunity breeds." (Doc. 46 at 7). In particular, Plaintiffs aver the TTCA results in children being unprotected from any harm resulting from the negligence of a school district which then leads to school districts being legally unaccountable for their actions. (Doc. 46 at 6).

The Court's role is to interpret the law created by others and "not to prescribe what it shall be." *Danforth v. Minnesota*, 552 U.S. 264, 290 (2008)(citation omitted). As mentioned previously, under Texas law, any waiver of governmental immunity "is a matter to be addressed by the Legislature." *City of Galveston v. State*, 217 S.W.3d 466, 476 FN. 7 (Tex. 2007). Interpreting the unambiguous language of the TTCA and based on the factual allegations contained in Plaintiffs' *Amended Complaint*, the Court concludes that Plaintiffs have not stated a claim to relief that is plausible on its face, as DISD cannot be held liable under Texas law.

Furthermore, even if the Court liberally construes Plaintiffs' action against DISD as one under 42 U.S.C. § 1983 based on Plaintiffs' allegations of a "state-created danger" and "special

relationship" (Doc 42. at 2, 8-11), Plaintiffs' claim still fails to survive DISD's *Motion to Dismiss*. In order to survive a 12(b)(6) motion, a plaintiff's complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). The tenet that a court must accept as true all allegations contained in a complaint when ruling on a Rule 12(b)(6) motion is inapplicable to legal conclusions. *Iqbal*, 129 S.Ct. at 1949.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a constitutional right, and (2) demonstrate that the alleged deprivation was committed by a person acing under the color of state law. *Laffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). Here, Plaintiffs have wholly failed to allege plausible facts that DISD violated either the Plaintiffs' or their son's constitutional rights.

First, the Fifth Circuit has declined to recognize the state-created danger theory of liability. *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability"); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 422-23 (5th Cir. 2006). In any event, Plaintiffs fail to state facts which would entitled them to relief under a state-created danger theory, namely that (1) the DISD employees increased the danger to their son, and (2) the DISD employees acted with deliberate indifference. *Piotrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001). "The key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id*. at 585, quoting *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994). Here Plaintiffs'

8

conclusory allegations of deliberate indifference do not satisfy this requisite, nor do their factual assertions that DISD employees negligently supervised their son.

Second, the "special relationship" exception that imposes on a state a duty to assume responsibility when the state takes a person into its custody and holds him against his will does not apply here. *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). It is the restraint on an individual's freedom, not the State's failure to act, that establishes a "special relationship." *Walton v. Alexander*, 44 F.3d 1297, 1303 (5th Cir. 1995). In this case, Plaintiffs' son was on a *voluntary* field trip, which does not give rise to the "special relationship" exception. *See Laffell*, 28 F.3d at 529 (concluding that even if a special relationship existed during the school day, the special relationship lapsed when compulsory attendance ended). Therefore, Plaintiffs have failed to allege facts that would make their right to recovery under the "state created danger" or "the special relationship" exceptions to governmental immunity plausible on its face.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Defendant DISD's *Motion to Dismiss* and Defendant State of Texas's *Amended Motion to Dismiss* be GRANTED. In addition, it is recommended that DISD's *Motion for Judgment on the Pleadings* (Doc. 29) be DENIED as moot.

SIGNED February 3, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE